# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

* * * * *

VARUN SHAH, )
        Plaintiff, ) Civil Action No.:
)
v. )
)
UNIVERSITY OF TEXAS SOUTHWESTERN )
MEDICAL SCHOOL; BELINDA VICIOSO, an )
individual; TARA DUVAL, an individual; )
CHARLES GINSBURG, an individual; AMIT )
SHAH, an individual, DOES I-X, inclusive, )
)
        Defendants. )

## COMPLAINT AND JURY DEMAND

COMES NOW, VARUN SHAH, ("hereinafter referred to as "Plaintiff"), by and through his counsel, Jason J. Bach of The Bach Law Group, PLLC, and hereby files this Complaint and Jury Demand and alleges against the above-named Defendants, and each of them, based upon knowledge, information and a reasonable belief derived therfrom, as follows:

## INTRODUCTION

This is a Complaint for Damages and injunctive relief brought by a student of University of Texas Southwestern Medical School. The claims, against the University and faculty of this public university, are based upon 42 U.S.C. Section 1983 and the Fourteenth Amendment of the United States Constitution, alleging infringement of Plaintiffs' right to substantive and procedural due process and equal protection. Plaintiff further brings claims against the University based upon Section 504 of the Rehabilitation Act of 1973 alleging denial of reasonable accommodations. Plaintiff also relies on the University of Texas Southwestern Student Handbook (Code of Student Rights and Responsibilities); and the UTSW Medical School Catalog and alleges a pendent breach of contract claim. Plaintiff has also asserted a claim against all Defendants for intentional infliction of emotional distress.

**PARTIES**

1. Plaintiff, VARUN SHAH, is and was a resident of Dallas, Texas, and at all times relevant herein was a student in the University of Texas Southwestern Medical School.

2. Defendant, UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL SCHOOL is a subdivision of the State of Texas and operates the Defendant Medical School, a public educational institution located in Dallas, Texas. This Defendant may be served by and through Dr. Daniel K. Podolsky, M.D., President of the University of Texas Southwestern Medical School, at his business address at 5323 Harry Hines Blvd., Dallas, Texas 75390.

3. Defendant, BELINDA VICIOSO, is a Professor and Instructor at the University of Texas Southwestern Medical School and is sued individually. At all pertinent times this Defendant was the Supervisor of the Internal Medicine rotation in which Plaintiff participated for approximately four weeks in the Spring of 2013. She was responsible for assuring the grading and dismissal system was fundamentally fair, was applied fairly, was careful and deliberate, was focused on professional judgement and did not discriminate based upon nationality or disability. She may be served individually at the University of Texas Southwestern Medical School, 5323 Harry Hines Blvd., Dallas, Texas 75390.

4. Defendant, TARA DUVAL, is an Assistant Professor at the University of Texas Southwestern Medical School and is sued individually. At all pertinent times this Defendant was the Supervisor of the Internal Medicine rotation in which Plaintiff participated for approximately four weeks in the Spring of 2013. She was responsible for assuring the grading and dismissal system was fundamentally fair, was applied fairly, was careful and deliberate, was focused on professional judgement and did not discriminate based upon nationality or disability. She may be served individually at the University of Texas Southwestern Medical School, 5323 Harry Hines Blvd., Dallas, Texas 75390.

5. Defendant, CHARLES GINSBURG, is the Senior Associate Dean and Professor at the University of Texas Southwestern Medical School and is sued individually. At all pertinent times Defendant Ginsburg was responsible for the care, management and control of all school business within its jurisdiction, including but not limited to the training of administrators, educators and other

staff members so as to assure the grading and dismissal system was fundamentally fair, was careful and deliberate and focused on professional judgement. Further, this Defendant had the duty to assure that administrators, educators and other staff members did not unduly discriminate against a student, whether it be due to nationality or disability. He may be served individually at the University of Texas Southwestern Medical School, 5323 Harry Hines Blvd., Dallas, Texas 75390.

6. Defendant, AMIT SHAH, is an Assistant Professor at the University of Texas Southwestern Medical School and is sued individually. He was responsible for assuring the grading and dismissal system was fundamentally fair, was applied fairly, was careful and deliberate, was focused on professional judgement and did not discriminate based upon nationality or disability. He may be served individually at the University of Texas Southwestern Medical School, 5323 Harry Hines Blvd., Dallas, Texas 75390.

7. That the true names or capacities, whether individual, corporate, associate or otherwise, of Defendants DOES I through X are unknown to Plaintiff, who therefore, sues said Defendants by such fictitious names.

8. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as DOE are responsible in some manner for the events and happenings referred to in this action and proximately caused damages to Plaintiff as herein alleged, and that Plaintiff will ask leave of this Court to amend this Complaint, to insert the true names and capacities of said Defendants, and when the same have been ascertained to join such Defendants in this action.

9. At all times herein, Defendants have been acting under color of law.

10. At all times relevant hereto, and in all their actions described herein, Defendants' actions took place in the State of Texas.

11. Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

12. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over the claims set forth in this action pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343 (civil rights) as the claims are based upon 42

U.S.C. §1983.

14. Supplemental jurisdiction over Plaintiff's pendent state law claims is invoked pursuant to 28 U.S.C. §1367, as the claims arise out of the same transaction and occurrence as Plaintiff's federal claims.

15. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district, and Plaintiff and Defendants are located in this district.

## GENERAL FACTUAL ALLEGATIONS

16. After completing the graduate program at Johns Hopkins School of Public Health, Plaintiff began his education at the University of Texas Southwestern Medical School (UTSMS).

17. Plaintiff successfully completed his first two years of medical school at UTSMS.

18. In his third year of medical school, Plaintiff successfully completed several rotations, including Surgery, Neurology, Pediatrics, Family Medicine, and his first Internal Medicine rotation, prior to commencing his second Internal Medicine rotation. Twelve of the physicians that Plaintiff worked under during those rotations gave him positive comments regarding his "professionalism."

19. Shortly after that rotation, on February 25, 2013, Plaintiff returned to the medical center to begin his second Internal Medicine rotation. The entire rotation lasted for 4 weeks, from February 25, 2013 through March 20, 2013. Defendant, Dr. Vicioso, was in charge of the first portion, which lasted to March 8, 2013.

20. During that portion of the rotation, Plaintiff received many positive reviews and feedback from physicians, including Dr. Joshipura and Dr. Parikh.

21. Drs. Joshipura and Parikh also commented that they believed Dr. Vicioso was picking on Plaintiff and they were not sure why. They encouraged Plaintiff and said "your work is solid," "we will speak to her," and "don't worry."

22. During the same Internal Medicine rotation, Dr. Parikh gave Plaintiff the third highest (or middle) grade regarding his History and Physical examination skills. In the Professionalism/ Interpersonal Skill, Dr. Parikh also gave Plaintiff the third highest grade and wrote "... Accepts criticism without much resistance when offered ...". Dr. Parikh commented that Plaintiff has a "good fund of knowledge and willing to learn but needs to work on organization. With more preparations

before rounds, he will make a good doctor."

23.     Despite all of the positive feedback and comments Plaintiff received from the other physicians who observed Plaintiff during his second Internal Medicine rotation and the high praise he received during his first rotation, Dr. Vicioso gave Plaintiff the lowest grades possible for his History and Physical examination skills. For his Professionalism/Interpersonal Skill, she gave him the second lowest grade possible stating, "... communication and misses innuendos or subtle actions ..." Also that he was "resistant or defensive in accepting criticism ..." ...Not always comfortable interacting with others." These comments were not based upon Plaintiff's performance in the rotation but were based upon personal animus Dr. Vicioso harbored toward Plaintiff due to his disability and his ethnicity.

24.     Plaintiff had the next section of his Internal Medicine rotation with Dr. Duval. At no point during the rotation did Dr. Duval ever raise any concerns regarding Plaintiff's professionalism. Even during the two feedback periods during the rotation, there was no commentary from Dr. Duval about Plaintiff having any professionalism issues. It was not until the end of the rotation, two weeks after the feedback periods, that Dr. Duval gave Plaintiff a failing grade for the rotation for alleged professionalism issues. Plaintiff believes that the basis for the failing grade given to him by Dr. Duval was predetermined and was made without regard for his performance in the rotation and was based purely on the fact that Dr. Vicioso gave Plaintiff a low grade in his prior rotation.

25.     Plaintiff's final rotation was Psychiatry with Dr. Waklu and Dr. Camp. Both physicians completed final evaluations for Plaintiff giving him scores of 90 or 100 in regard to his clinical skills, professionalism and interpersonal skills. Plaintiff received comments such as, "Varun was a valuable member of the team during his psychiatry rotation. He showed concern and empathy for his patients. He was respectful and professional in working with patients and staff. He was curious and took initiative to learn about his patients, and he cared for some very complicated patients during his time on our service. He gave a fantastic presentation about OCD that covered everything from the neurobiologic research to clinical applications. Overall, he was a pleasure to work with, and I think he will do very well in his medical career." and "Mr. Varun Shah did a good job during his rotation on the Mental Health Gold Team at the Dallas VA Medical Center. He did a presentation on

mood disorders which was excellent. Adequate fund of knowledge. He got along well with staff on the staff on the team and was active in treatment team meetings. I wish him all the best."

26. Defendant, Amit Shah, M.D., Associate Professor, wrote a letter to the Student Promotions Committee (SPC) in support of Vicioso's and Duval's assessments and to have Plaintiff removed from medical school. Shah's statement made many allegations against Plaintiff that were blatantly false, were exaggerated, and were arbitrary and capricious in that his statements were made in blind support of Drs. Vicioso and Duval's statements of which he lacked any personal knowledge. Shah's statements were not made based upon any facts but were made to appease his departmental superior, Dr. Vicioso and to conceal the fact that his departmental junior, Dr. Duval, submitted an arbitrary and capricious report regarding Plaintiff to the SPC.

27. As a result of the arbitrary and capricious comments from Drs. Vicioso, Duval, and Shah regarding their unfounded concerns about Plaintiff's "professionalism," Plaintiff was called before the medical school SPC pursuant to a medical school policy which states that after a student has three admonishments for professionalism, the SPC will meet to discuss those concerns.

28. Plaintiff was not notified of the full agenda and purpose of the SPC meeting, he was not notified of the of his right in this process, he was not permitted to attend the SPC meeting and confront his accusers or contest the charges, and was not permitted to have anybody advocate on his behalf before the SPC or address the false allegations made against him by Drs. Vicioso, Duval and Shah. Notably, despite the fact that Plaintiff's "professionalism" was being called into question, upon information and belief, none of the physicians who gave Plaintiff positive comments during his Neurology and Family Medicine rotations were represented in the SPC committee meeting. Plaintiff drafted a letter to the SPC based upon the advice of Dr. Mihalic and the script/format she suggested he follow. She suggested that for the best results, Plaintiff should accept charges, take responsibility and suggest a plan to improve, which he did. This advice was ineffective and was dismissed by the SPC.

29. In addition, the SPC was biased toward Plaintiff as Dr. Bergen, who had already provided negative reviews regarding Plaintiff's professionalism during her surgery rotation, was the head of the SPC that recommended Plaintiff's dismissal.

30. Shortly after the SPC meeting, Plaintiff was informed that he was dismissed from the medical school due to his purported lack of professionalism.

31. Plaintiff was permitted to appeal this decision but was not permitted to have an advocate during this process. He noted in his appeal that he suffered from ADHD and his physician prescribed him medical treatment and that his ability to organize and stay on task was likewise effected by both and that he would going to take specific counseling for his ADHD to deal with these issues and other problems related to ADHD. Plaintiff's appeal was denied without regard for his documented disability.

32. Plaintiff filed a final appeal with the Provost and Dean, Dr. Fitz. Dr. Ginsburg denied Plaintiff's appeal without explanation. Moreover, there is no record this disability was considered by the University prior to his dismissal in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq.

33. Section 504 of the Rehabilitation Act of 1973 forbids the University from discriminating against students with a qualified disability. Plaintiff provided the University with sufficient information that he suffered from ADHD, which substantially limits his ability to participate in the medical school curriculum, and qualifies him under Section 504. 34 C.F.R. § 104.3. Yet the University ignored his disability, failed to consider the fact that Plaintiff's alleged "professionalism" violations were a direct result of his disability and failed to provide him with reasonable accommodations, despite the fact that the accommodations he requested were apropriate and reasonable, and failed to take his disability into account when deciding to dismiss him from the University.

34. Federal law dictates that Plaintiff is entitled to various "academic adjustments" to ensure that he is not discriminated against, based upon his disabilities. 34 C.F.R. § 104.44. These adjustments can include substitution of specific courses required to complete a degree program, and modification "of the manner in which specific courses are conducted." 34 C.F.R. § 104.44(a). Section 504 also requires that a college or university modify how they evaluate academic achievement of a student with disabilities. 34 C.F.R. § 104.44(c).

35. The decisions made by Defendants to remove Plaintiff from the university are arbitrary

-7-

and capricious in nature, and are also in violation of University Policy on Discrimination and Harassment and Title IX Statement. In addition to his disability, the "professionalism" concerns raised by Plaintiff's professors were caused by Plaintiff's cultural background.

36. As a result of Defendants' arbitrary, capricious, and unlawful actions, Plaintiff has been prevented from attending classes at the University, thus halting and destroying his ability to attend medical school or to ever enter the medical profession.

37. As a result of the above, Defendants, and each of them, have wrongly caused Plaintiff to be sanctioned and removed from the University and for the above-noted sanctions to be wrongly placed on his record, depriving him of the opportunity to obtain an education and further his career, and inflicting emotional distress and physical injury, all damaging Plaintiff in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

38. The harm caused by Defendants is irreparable and can only be mitigated by the reinstatement of Plaintiff in the good standing in the medical school, removing any notation in his academic record that reflects a dismissal, and prohibiting Defendants from further interfering with Plaintiff's educational future.

## FIRST CAUSE OF ACTION

### *CIVIL RIGHTS VIOLATION 42 U.S.C. §1983, PROCEDURAL DUE PROCESS*

39. Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

40. That Plaintiff has a clearly established right to equal access to all benefits and privileges of a public higher education and a right to be free from said illegal practices and policies.

41. Plaintiff has a property interest subject to constitutional protection in his continuing education at the University by virtue of his contract with the University.

42. Defendant failed to comply with its own policies and due process protections set forth in its University's Student Disciplinary Policy and the University Statutes by failing to allow Plaintiff any type of hearing or opportunity to address the false allegations made against him prior to his dismissal, by failing to allow him to confront the witnesses against him. Defendants denied Plaintiff an opportunity to directly confront Drs. Vicoso, Shah, Duval and Mihalic and offer counter

arguments to the SPC. In fact, Plaintiff had absolutely no opportunity to provide any input to the SPC during its initial deliberation process.

43. Defendant failed to provide any written notice adequately explaining the reasons for Plaintiff's dismissal. The written notice merely stated that the committee has reviewed the forms submitted against Plaintiff and recommended dismissal on the grounds of professionalism. Thus Plaintiff was denied an adequate opportunity to appeal the determination. Plaintiff was never even provided Dr. Shah's letter, which denied Plaintiff the opportunity address the false allegations against him.

44. Plaintiff was denied his right to have counsel at the SPC hearing and was not given an opportunity to have any advocate.

45. Dr. Shah informed Plaintiff that he filed the professionalism form without even allowing Plaintiff to explain his side of the story. In addition, Dr. Mihalic also filed a professionalism form without even allowing Plaintiff to explain his side of the story. Plaintiff was not informed of Dr. Mihalic's submission of the form until 2 months later when Dr. Wagner, the Associate Dean for Student Affairs, asked him why he had not come to see him when the professional form was filed "almost two months ago."

46. The SPC was biased toward Plaintiff as Dr. Bergen, who had already provided negative reviews regarding Plaintiff's professionalism during her surgery rotation, was the head of the SPC that recommended Plaintiff's dismissal.

47. Plaintiff provided the University with sufficient information that he suffered from ADHD, which substantially limits his ability to participate in the medical school curriculum. Yet the University ignored his disability, failed to consider the fact that Plaintiff's alleged "professionalism" violations were a direct result of his disability

48. As a result of Defendants actions, Plaintiff suffered and continues to suffer a deprivation of his rights, privileges and immunities secured to them by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

49. That by reason of the aforesaid actions, Plaintiff is entitled to a Permanent Injunction

requiring all Defendants, or their agents, to cease all unlawful and unconstitutional acts that they currently engage in.

50. The acts, conduct and behavior of each of the individual Defendant was performed knowingly, intentionally, oppressively, and maliciously, by reason of which Plaintiff is entitled to punitive damages.

51. It has been necessary for the Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## SECOND CAUSE OF ACTION

*CIVIL RIGHTS VIOLATION 42 U.S.C. §1983, SUBSTANTIVE DUE PROCESS*

52. Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

53. That Plaintiff has a clearly established right to equal access to all benefits and privileges of a public higher education and a right to be from said illegal practices and policies.

54. The actions of the Defendants, as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

55. As a result of Defendants actions, Plaintiff suffered and continues to suffer a deprivation of his rights, privileges and immunities secured to them by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

56. The acts, conduct and behavior of each of the individual Defendant was performed knowingly, intentionally, oppressively, and maliciously, by reason of which Plaintiff is entitled to punitive damages.

57. It has been necessary for the Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## THIRD CAUSE OF ACTION

*CIVIL RIGHTS VIOLATION 42 U.S.C. §1983, EQUAL PROTECTION*

58. Plaintiff repeats and realleges each and every allegation made in the foregoing

paragraphs as if fully set forth herein.

59. That the above actions by Defendants have resulted in the denial of equal protection rights, as a "protected class" and a "class of one," all in violation of the Fourteenth Amendment to the United States Constitution, as Plaintiff was retaliated against, harassed, disciplined against, intimidated, and dismissed from the medical school, all against his will, and differently than those similarly situated medical students whose national origin is not Indian and whose first language is not English.

60. That the actions of Defendants were the result of personal animus against the Plaintiff, and said actions and denials were taken without any rational basis.

61. That by reason of the aforesaid actions, Defendants' actions exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of Plaintiff and other similarly situated students, all in violation of his constitutional rights.

62. As a result of Defendants' actions, Plaintiff suffered and continues to suffer a deprivation of his rights, privileges and immunities secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

63. That by reason of the aforesaid actions, Plaintiff is entitled to a Permanent Injunction requiring all Defendants, or their agents, to cease all unlawful and unconstitutional acts that they currently engage in, and to allow his immediate return to the University.

64. The acts, conduct and behavior of each of the individual Defendants was performed knowingly, intentionally, oppressively, and maliciously, by reason of which Plaintiff is entitled to punitive damages.

65. It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## FOURTH CAUSE OF ACTION

*VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973*

(UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL SCHOOL)

66. Plaintiff repeats and realleges each and every allegation made in the foregoing

paragraphs as if fully set forth herein.

67. Plaintiff is a qualified individual with a disability, as defined by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 705(20).

68. Defendant University, receives federal financial assistance, as defined by 29 U.S.C. §794, either directly or indirectly through federal financial aid, and, as such, may not discriminate against a person because of her disability.

69. Solely by reason of her disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at the University, such acts and omissions violating the Rehabilitation Act thereby.

70. The University exercised bad faith in failing to provide appropriate and necessary accommodations and modifications to Plaintiff, so that she could continue in her educational program, a violation of the Rehabilitation Act thereby. For example, Plaintiff requested 2-4 months off to regain his mental and emotional health and to commence ADHD coaching to allow him to gain insight on how this disability affects his performance in medical school and his instructors perceptions of his professionalism. This request was denied without any explanation.

71. The University failed to modify how they evaluated the academic achievement of Plaintiff in violation of the Rehabilitation Act thereby.

72. Such acts, omissions and failures by the University proximately caused injuries to Plaintiff.

73. Defendants, and each of them, have wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, harassed and retaliated against, forcibly withdrawn from the program, all in violation of his rights pursuant to Section 504 of the Rehabilitation Act of 1973, depriving him of the opportunity to complete his education and further his career, and inflicting emotional distress and physical injury, all to his damage.

### FIFTH CAUSE OF ACTION

*VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT (ADA)*

(UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL SCHOOL)

74. Plaintiff repeats and realleges each and every allegation made in the foregoing

paragraphs as if fully set forth herein.

75. Plaintiff is a "qualified individual with a disability," as defined in 42 U.S.C. § 12131(2).

76. The University is considered a "place of public accommodation," as defined in 42 U.S.C. § 12181(7), as it is a postgraduate private school, so as to be covered by the mandate of the ADA.

77. The University is a facility, the operation of which constitutes a program and services for ADA purposes.

78. The University failed and refused to reasonably accommodate Plaintiff in violation of Title III of the ADA. Such failures caused injuries to Plaintiff.

79. The University failed and refused to reasonably modify its services in violation of Title III of the ADA. Such failures proximately caused injuries to Plaintiff.

80. Defendants, and each of them, have wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, harassed and retaliated against, forcibly withdrawn from the program, all in violation of his rights pursuant to the ADA, depriving him of the opportunity to complete his education and further his career, and inflicting emotional distress and physical injury, all to his damage.

81. It has been necessary for the Plaintiff to obtain the services of an attorney to prosecute this action and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

82. Plaintiff is entitled to injunctive and declaratory relief to obtain the physical and programmatic accessibility, as permitted under the statute, to allow him immediate access and participation in this public education program.

### SIXTH CAUSE OF ACTION

*BREACH OF CONTRACT*

(UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL SCHOOL)

83. Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

84. Plaintiff, has a contract with Defendant university in connection with rights explicitly

guaranteed by the University of Texas Southwestern Student Handbook (Code of Student Rights and Responsibilities); and the UTSW Medical School Catalog , and other written policies and procedures of the Defendant, including but not limited the policies on equal educational opportunities, student academic procedures.

85. The actions of the University, including but not limited to Defendant's discrimination, denial of reasonable accommodations, physical and programmatic accessibility, harassment, retaliation, the forcible withdrawal from the program, failure to provide adequate, process each constitute a breach of the express and implied contract.

86. The UTSW Professionalism Policy states "The course/clerkship director will meet and provide feedback to the student making recommendations for improvement as will the Associate Dean for Student Affairs clinical Course/Clerkship Directors are encouraged in a private forum to identify and review students who have had difficulty with professionalism to monitor and provide earlier recognition and intervention if continued behavior is noted." The University breached this agreement in failing to provide Plaintiff with feedback or recommendations for improvement regarding his professionalism. He was simply failed from his rotation and dismissed from the University.

87. The UTSW Professionalism Policy states "The course/clerkship director then files the report with the Associate Dean for Student Affairs, who subsequently meets with and counsels the student on the behaviors of concern and works with the clerkship director to assist the student in the development of a remediation plan. If after discussion with the course director and Associate Dean for Student Affairs, a student disagrees with the assessment of the behaviors/situation, he/she may request a review by an a committee of students and faculty appointed by the Dean." The University breached this agreement by failing to meet with and counsel Plaintiff and assist Plaintiff in the development of a remediation plan. Plaintiff was simply failed from his rotation and dismissed from the University.

88. The actions of Defendant University constitute a breach of contract.

89. As a result of the breach committed against the Plaintiff has been damaged, as described above in an amount in excess of seventy five thousand dollars ($75,000.00).

90.     It has been necessary for the Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

91.     As a direct and proximate result of these Defendants' conduct, separately and/or collectively, jointly and severally, Plaintiff has suffered injuries and damages, which he may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to the following:

   a.   Reimbursement of all tuition;

   b.   Lost wages.

   c.   Reasonable medical care and expenses in the past for exacerbation of his medical condition;

   d.   Mental anguish in the past; and

   e.   Mental anguish in the future.

92.     By reason of the above, the subject of this lawsuit, Plaintiff has suffered losses and damages in a sum in excess of seventy five thousand dollars ($75,000.00).

## SEVENTH CAUSE OF ACTION

### *INTENTIONAL INFLICTION OF SEVERE MENTAL DISTRESS*

93.     Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

94.     As a result of Defendants' intentional and negligent conduct and omissions, which constitute extreme and outrageous behavior, Plaintiff suffered and continues to suffer great mental and emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

95.     Plaintiff has required medical and/or psychological care as result of the malfeasance and nonfeasance of Defendants. This has caused Plaintiff to incur expenses for medical care, treatment, and expenses incidental thereto. The total amount of Plaintiff's damages cannot yet be fully ascertained and, as such, Plaintiff respectfully asks leave of this Court to amend this Complaint to insert the full amount when such have been fully ascertained.

96. As a result of the mental distress described above, Plaintiff has suffered serious psychological injury, loss of community reputation, medical expenses, and to incur severe financial obligations in order to retain attorneys to seek redress against the unlawful conduct of the Defendants, as well as grievous mental suffering, all to her damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

97. The acts, conduct and behavior of the Defendants were performed willfully, intentionally, oppressively, fraudulently and maliciously, by reason of which Plaintiff is entitled to punitive damages in a sum in excess of Seventy Five Thousand Dollars ($75,000.00).

98. It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

### DEMAND FOR JURY TRIAL

99. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

*WHEREFORE,* Plaintiff prays that this Honorable Court: Enter judgment in Plaintiff's favor, and against the Defendants, and each of them: (a) for compensatory damages in an amount to be determined at trial; (b) for punitive damages each in an amount to be determined at trial; (c) for injunctive and declaratory relief; and (d) together with the costs and disbursements of this action and such other attorney's fees pursuant to 42 U.S.C. §1988, 42 U.S.C. § 2000d *et seq.*; and further relief as justice requires.

DATED this 11th day of December, 2013.

The Bach Law Firm, LLC

By: */s/ Jason J. Bach, Esq.*
JASON J. BACH, ESQ.
6053 South Fort Apache Road, Suite 130
Las Vegas, NV 89148
*Attorney for Plaintiff*